SOUTH CAROLINA LOAN AND TRUST CO. v. LAWTON.

1. MARRIAGE SETTLEMENT.—The parties to a marriage trust deed may alter it before marriage by a subsequent instrument, and thereby change the property rights of children of the marriage fixed by the original deed, and the two instruments should be read together at time of marriage, and so read they here provide for debts of contracting husband in existence at date of trust deed.
2. EQUITY—NULLA BONA.—A CREDITOR properly enforces his debt reduced to judgment with *nulla bona* return by application to court of equity for sale of property conveyed by trust deed executed after debt was contracted.

Before ALDRICH, J., Charleston, February, 1904. Affirmed.

Action by South Carolina Loan and Trust Co. against Ralph W. Lawton, Louise J. Lawton and Grace L. Lawton. From Circuit decree, defendants appeal.

*Mr. W. St. Julian Jervey,* for appellant, cites: *Can the grantor and the beneficiary for life, in an ante-nuptial settlement, by subsequent agreement, destroy or limit the estate in remainder?* 1 Ency., 95; 1 Whar. on Con., sec. 50; 19 Ency., 1225, 1242; 2 Whar. on Con., 855; 3 H. & M., 399; 38 Miss., 205; 1 Fearne on Rem., 111, 112, 114. *Rule as to annulling deed based on valuable consideration for fraud:* 56 S. C., 154; 24 S. C., 499; 38 S. C., 437.

*Messrs. Buist & Buist,* contra, cite: *Original deed of trust was not intended to interfere with rights of creditors:* 75 Pa. St., 269; L. R., 14 Eq., 365; L. R., 10 Eq., 405; 14 Ves., 273; 3 DeG., J. & S., 487; 29 L. T. N. S., 46; 15 Beav., 234; L. R., 9 Eq., 44; 7 Pet., 394. *Creditor's bill is appropriate remedy:* 53 S. C., 236; 33 S. C., 530; 20 S. C., 507.

July 2, 1904. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The defendant, Ralph W. Lawton, was a member of the firm of L. W. Bicaise & Co. The plaintiff recovered judgment against the firm, and the sheriff made a return of *nulla bona* on the execution. Thereupon this action was commenced by the plaintiff against Ralph W. Lawton, Louise J. Lawton, his wife, and Grace L. Lawton, their infant child, for the purpose of subjecting to sale for the payment of the judgment of the plaintiff a lot of land held by Ralph W. Lawton, as trustee, under a declaration of trust or marriage settlement executed by him previous to and in consideration of the marriage. The plaintiff's suit is "in behalf of itself and all other creditors of the defendant, Ralph W. Lawton, either individually or by reason of his being a member of the late copartnership of L. W. Bicaise & Co., who shall come in and seek relief by and contribute to the expenses of this proceeding."

Prior to October 14, 1898, the lot was the individual property of Ralph W. Lawton, and was, of course, subject to his debts.

The marriage settlement was executed on October 14, 1898, and provided that Ralph W. Lawton should hold the property, free from his own debts, in trust for the benefit of Louise J. Buhre, who was to become his wife, for her life, and after her death for the children born to them who might survive the wife, the child or children of any deceased child to take the share the parent would have taken if living. The other details of the trust are not involved.

A creditor of Bicaise & Co. having discovered from the

record the existence of the marriage settlement, threatened to attack it for fraud. At the instance of this creditor, Lawton and Miss Buhre, before their marriage, executed and had placed on record an instrument of writing, dated October 20, 1898, and directed "to all unto whom these presents shall come or whom the same shall in any wise concern," in which, after reciting the declaration of trust of October 14, 1898, they continue:

"And whereas said declaration of trust was made, executed and delivered by the said Ralph W. Lawton and accepted by the said Louise J. Buhre with the understanding and agreement that such declaration of trust was not intended to affect or interfere with any of the rights of any of the existing creditors of Ralph W. Lawton, either individual or by reason of his being a member of the copartnership of L. W. Bicaise & Co.

"Now, therefore, these presents witness, that we, the said Ralph W. Lawton and Louise J. Buhre, parties to said declaration of trust, do hereby declare and make it known that said declaration of trust and all the rights and interests which have accrued or are to accrue thereunder are subject to the rights of the creditors of the said Ralph W. Lawton, either individual or as a member of the firm of L. W. Bicaise & Co., which now exist or which may hereafter continue to be kept in existence by the renewal of any such obligations, provided that the original obligations are existent at the present time."

The marriage occurred several months after the execution of this paper. The debt to the plaintiff was owing by Bicaise & Co. when the marriage settlement was made.

The Circuit Judge, upon these facts, ordered the land sold for the payment of plaintiff's debt, unless the defendants should themselves make payment by the date fixed for the sale. The decree contains other provisions, but none of them are involved in this appeal.

The defendants first insist that the land cannot be subjected to the payment of the debt, under the terms of the

second instrument, because the infant, Grace L. Lawton, acquired under the first instrument rights in the land free from the claims of creditors which could not be affected by the second instrument.

The principle is very clear upon reason and it is upheld by many authorities, that a marriage contract fixing the property rights of children of the marriage cannot be altered by the husband and wife after the contract has become fully executed by the marriage. Fearne on Remainders, 107; *Tabb* v. *Archer,* 3 Am. Dec., 657 (Va.) ; *Gorin* v. *Gordon,* 38 Miss., 205 ; 19 A. & E. Ency. Law, 1229.

On the other hand, a somewhat careful search fails to disclose a single case in which it has been held that the parties to an ante-nuptial contract may not change it at will before the marriage. Until the marriage takes place, the contract is executory. It is made in contemplation of marriage, and if the marriage never occurs, the paper never comes into force. It is subject to alteration at any time before marriage, because it is not until that event that the execution of the contract is complete. The law is thus laid down in Fearne on Remainders, 107: "Lord Talbot, however, in a subsequent case, adopted the distinction urged by Mr. Vernon in that of *Burton* v. *Hastings;* and laid it down as a rule, that where articles are entered into before marriage, and a settlement made after marriage, different from those articles (as if by articles the estate was to be in strict settlement, and by the settlement the husband is made tenant in tail), the Court will set up the articles against the settlement; but where both articles and settlement are previous to the marriage, at a time when all parties are at liberty, the settlement differing from the articles, will be taken as a new agreement between them, and shall control the articles.

"The Court will not interfere if both articles and settlement are made before marriage, unless the settlement in that case be expressed to be made in pursuance of the articles; for the Court will suppose that the parties had altered their intention, with respect to the terms of the marriage, which

they may do before the marriage, though not afterwards; and that the settlement was made in pursuance of such new agreement, and not of the articles."

We think it is quite clear that Ralph W. Lawton and Louise J. Buhre could alter the terms of the marriage contract concerning the property prior to their marriage, for the reason that until that event the prospective issue could acquire no rights in the property under the settlement.

The next question is: Did the parties so alter the settlement before marriage as to make the property subject to the debts then outstanding against Lawton? The second instrument was clearly intended as a correction and modification of the first, so as to make it express the real purpose of the parties. So corrected, the declaration of trust made by Lawton in favor of his wife and children must be read, when it came into force by the marriage, as containing an express proviso that the provision for his wife and children should be subject to the payment of his existing debts.

When this conclusion is reached, the question of fraud falls from the case. This question would have been vital, if the rights of creditors had not been preserved by the change in the terms of the marriage settlement. Reading the two papers as one coming into effect with the marriage, it is manifest there was no wrong done to creditors. In this view the question whether Bicaise & Co. was solvent when the marriage settlement went into effect, is also unimportant.

It is insisted, however, on behalf of Mrs. Lawton, that there was no consideration for the second paper to which she was a party. It follows from the views already expressed, that no other consideration than marriage was necessary to the second instrument modifying the first. There is not complete execution of such instruments until actual marriage, and it does not matter how many changes may be made and how many different instruments may be signed, the settlement in the last form it assumes before marriage is the real contract supported by the consideration of marriage.

The defendants' position that the plaintiff's only remedy was to have the sheriff enforce payment by sale of the land embraced in the marriage settlement under his execution, cannot be sustained. When the trust was declared, the plaintiff had no judgment, and hence no lien on the property. It has since recovered judgment, and its effort to enforce the execution has resulted in a return of *nulla bona*. In these circumstances, it was proper to seek the aid of the court of equity to enforce its rights under the terms of the marriage settlement.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.